**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| 3PAK LLC, doing business as Oma Bap; HUGO PROPERTIES, LLC, | No. 24-7139 |
| *Plaintiffs - Appellants*, | D.C. No. 2:23-cv-00540-TSZ |
| and | |
| MOLLY MOON'S HOMEMADE ICE CREAM, LLC, | OPINION |
| *Plaintiff*, | |
| v. | |
| CITY OF SEATTLE, | |
| *Defendant - Appellee*. | |

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted November 18, 2025
Seattle, Washington

Filed May 5, 2026

2                    3PAK LLC v. CITY OF SEATTLE

Before: M. Margaret McKeown, Richard A. Paez, and
Roopali H. Desai, Circuit Judges.

Opinion by Judge McKeown

**SUMMARY**[*]

**State-Created Danger Doctrine / Takings Clause**

The panel affirmed in part and reversed in part the district court's dismissal of an action brought by 3Pak, LLC d/b/a Oma Bap and Hugo Properties, LLC (collectively, the "Businesses") alleging state-created danger, nuisance, and Takings Clause claims, arising from the City of Seattle's decision not to police or otherwise intervene in ongoing protests sparked by the murder of George Floyd.

In June 2020, protestors occupied a sixteen-block area within the Capitol Hill neighborhood of Seattle and formed the Capitol Hill Occupied Protest ("CHOP"). In response to pressure from protestors, the Seattle Police Department abandoned its nearby East Precinct building and dramatically reduced its policing of Cal Anderson Park, a public park at the heart of CHOP, and the surrounding city blocks. CHOP was forcibly disbanded by police on July 1, but protests and encampments persisted until as late as December 2020, causing disruption to the neighborhood. The Businesses, both located across from Cal Anderson

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Park, sued Seattle, claiming that the City's facilitation of the CHOP protests led to their total economic devastation.

The panel first held that the state-created danger doctrine does not apply to the Businesses' economic harm stemming from Seattle's decision to withdraw police from the East Precinct. The state-created danger doctrine permits recovery only for state-created harm to bodily integrity and autonomy, and not for lost profits or other forms of economic loss. Because the Businesses claimed only economic loss, the district court properly dismissed this claim.

The panel also affirmed the district court's dismissal of the Takings Clause claims. The cessation of police services in Capitol Hill did not result in either a per se or right-of-access taking under the Fifth Amendment, where the Businesses did not allege any affirmative government invasion of their own property or assert an interest that is protected under state law.

Although the Constitution did not provide a federal remedy for the Businesses' harm, the panel held that they may have a surviving claim under state tort law. While the district court appropriately found that the Businesses failed to timely file their nuisance claims within two years, the district court should have permitted the Businesses to argue for equitable tolling under the principles of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), which the panel held are available under Washington state law. The panel therefore reversed the district court's dismissal of the nuisance claims and remanded for further proceedings.

4          3PAK LLC V. CITY OF SEATTLE

## COUNSEL

Angelo J. Calfo (argued) and Tyler S. Weaver, Angeli & Calfo LLC, Seattle, Washington; Patricia A. Eakes, Morgan Lewis & Bockius LLP, Seattle, Washington; for Plaintiffs-Appellants.

Shane P. Cramer (argued), Bryan Cave Leighton Paisner LLP, Seattle, Washington; Matthew J. Stanford, Bryan Cave Leighton Paisner LLP, Phoenix, Arizona; Olaniyi Q. Solebo, Bryan Cave Leighton Paisner LLP, San Francisco, California; for Defendant-Appellee.

## OPINION

McKEOWN, Circuit Judge:

In June 2020, sparked by the murder of George Floyd, protestors occupied a sixteen-block area within the Capitol Hill neighborhood of Seattle and formed the Capitol Hill Occupied Protest ("CHOP"). On June 8, in response to mounting pressure from protestors, the Seattle Police Department ("SPD") abandoned its nearby East Precinct building and dramatically reduced its policing of Cal Anderson Park, a public park at the heart of CHOP, and the surrounding city blocks. CHOP was forcibly disbanded by police on July 1, but protests and encampments persisted in the vicinity until as late as December 2020, causing disruption to the neighborhood.

Two businesses located across the street from Cal Anderson Park assert that for six months, they dealt with police inaction in the face of neighborhood-wide vandalism,

trespass, theft, unsanitary conditions, road blockades, and near-nightly gunfire that resulted in two deaths. In a novel claim, they invoke the state-created danger doctrine in order to recover for purely economic harm to their businesses stemming from Seattle's decision to withdraw police from the East Precinct. That claim fails because the state-created danger doctrine permits recovery only for state-created harm to bodily integrity and autonomy, and not for lost profits or other forms of economic loss. Nor did the cessation of police services in Capitol Hill result in either a per se or right-of-access taking under the Fifth Amendment. Although the Constitution does not provide a federal remedy for the businesses' harm, they may have a surviving claim under state tort law. While the district court appropriately found that the businesses failed to timely file their nuisance claims within two years, it should have permitted the businesses to argue for equitable tolling under the principles of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), which we hold are available under Washington state law. We therefore affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

### A. Factual Background

On June 8, 2020, the City of Seattle "abruptly deserted" the SPD's East Precinct, located one block from Cal Anderson Park, in response to ongoing protests in and around the Park after the murder of George Floyd. In the days after the precinct was abandoned, protestors repurposed barriers left behind by the police to block road and sidewalk access to sixteen blocks of the Capitol Hill neighborhood, including all of Cal Anderson Park. Protestors declared that the enclosed area, eventually called CHOP, would be

"[a]utonomous" and free from police. In the three weeks that followed, thousands of protestors flocked to CHOP. Many joined the "massive tent city" that formed in the park and surrounding streets.

The businesses involved in this appeal, 3Pak, LLC d/b/a Oma Bap, a Korean restaurant, and Hugo Properties, LLC, the owner of 1111 East Olive Apartments (collectively, the "Businesses"), are both located across the street from Cal Anderson Park. They sued Seattle, claiming that the City's facilitation of the CHOP protests and encampment led to their total economic devastation.

The Businesses claim their harm flowed primarily from the City's decision not to police or otherwise intervene in CHOP. The Businesses allege that the City enacted a policy under which the police and fire departments "would not enter the CHOP area except during 'mass casualties,'" resulting in delayed responses or no responses at all to "nearly nightly" gunfire that resulted in two deaths, as well as vandalism, trespass, and other property crimes.

According to the Businesses, they were also harmed because the City "active[ly] support[ed], encourage[d], and endorse[d] the occupation" through public statements made by Seattle Mayor Jenny Durkan, including "tweets, interviews, and other statements" that painted CHOP as a "perpetual block party."

Finally, the Businesses allege that they were harmed by the City's direct provision of material resources to CHOP protestors, including, among other things, providing additional concrete street barriers; providing washing and sanitation facilities, portable toilets, and nighttime lighting to protestors; placing dumpsters for protestor use on the street in front of the Businesses; placing speed bumps and

Department of Transportation signs around Capitol Hill to discourage thru-traffic; providing the protestor-erected medical tent with fire extinguishers and first-aid supplies; and permitting the use of the City-owned hose bibb to provide water to those living at the Cal Anderson Park encampment.

The City cleared CHOP on July 1, 2020. Even so, the Businesses allege that CHOP-related protestor disruption continued for months after the clearing because the City continued to permit the occupation of Cal Anderson Park by a "large encampment of protestors and homeless people" after July 1, and because the intersection directly outside the Businesses was used as a dumping ground. Disruption to the neighborhood ended as late as December 2020, six months after the CHOP protests had begun.

The economic losses claimed by the Businesses include lost revenue from numerous tenants who broke their leases or demanded rent concessions, costs to repair broken and boarded windows, and the costs to clean graffiti from the properties. They also claim that vendors, customers, and prospective tenants were deterred from doing business with them because of their location adjacent to the protest.

## B. Procedural Background

The Businesses were absent putative class members in an earlier class action—*Hunters Capital, LLC v. City of Seattle*, 650 F. Supp. 3d 1187 (W.D. Wash. 2023)—first filed on June 24, 2020. That case involved substantively identical claims to the claims in this case, and plaintiffs' counsel in *Hunters Capital* represents the Businesses here. After class certification was denied, the parties settled on February 15, 2023.

Eleven months after class certification was denied, Oma Bap filed its separate complaint against the City on April 6, 2023. Hugo Properties, LLC filed a complaint against the City on June 7, 2023. Those complaints were consolidated along with the complaint of a third plaintiff, Molly Moon's Handmade Ice Cream LLC, on August 14, 2023. Molly Moon's did not appeal the judgment dismissing its claims. The Businesses filed their First Amended Consolidated Complaint on October 6, 2023, alleging state-created danger, nuisance, and Takings Clause claims.

The City moved to dismiss the consolidated complaint, and the district court granted that motion in part on January 17, 2024. The district court dismissed the state-created danger claim for failure to establish that the Businesses were subjected to an "actual, particularized danger," and also dismissed the Takings Clause claims. The district court also found that the Businesses had failed to timely file their nuisance claim, but deferred ruling on whether the statute of limitations could be equitably tolled until the Washington Supreme Court published its opinion in *Campeau v. Yakima HMA, LLC*, 551 P.3d 1037 (Wash. 2024), which was then pending. *Campeau* was published on July 11, 2024. The district court then dismissed the nuisance claim and entered final judgment on October 25, 2024.

## ANALYSIS

### A. The State-Created Danger Doctrine Does Not Apply to the Businesses' Economic Harm

The Fourteenth Amendment mandates that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Although there is generally no "affirmative obligation on the State to protect a person's life, liberty, or property," the

state-created-danger exception to that rule extends liability to state actors "for their roles in creating or exposing individuals to danger they otherwise would not have faced." *Polanco v. Diaz*, 76 F.4th 918, 925–26 (9th Cir. 2023) (citation modified). The Civil Rights Act of 1871, codified at 42 U.S.C. § 1983, provides a cause of action against state officials who deprive plaintiffs of their federal constitutional rights, including the right to be free from state-created danger.

The doctrine emerges from *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989).[1] In *DeShaney*, state officials failed to intervene in the ongoing abuse of a four-year-old child by his father, despite a caseworker's monthslong documentation of "suspicious" injuries to the child. 489 U.S. at 192–93. The father eventually beat his son so severely that he fell into a coma and suffered permanent brain damage. *Id.* at 193. The child claimed that the state deprived him of "his liberty interest in freedom from unjustified intrusions on personal security" by failing to protect him from his father's violence. *Id.* at 194–95 (citation modified). In rejecting the due process claim, the Supreme Court held that there was no "affirmative right to governmental aid." *Id.* at 196. However, the Court in dicta left the door open to a substantive due process claim in two circumstances: when the state has taken an individual into custody, *id.* at 199–200, or when the state has placed a victim in a "worse position than that in which he would have been had it not acted at all" by playing a "part in [the harms'] creation" or by

---

[1] At least one circuit acknowledged a version of the state-created danger doctrine prior to *DeShaney*. *See White v. Rochford*, 592 F.2d 381, 383–84 (7th Cir. 1979); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982).

"render[ing] him . . . more vulnerable" to those harms, *id.* at 201. That latter exception has developed into the state-created danger doctrine.

We first applied the doctrine in *Wood v. Ostrander,* which involved harm to a plaintiff's liberty interest in "physical security." 879 F.2d 583, 589–90 (9th Cir. 1989). Since *Wood*, we have considered state-created danger claims in a number of cases. In *every* case, the harm at issue—as in *DeShaney*—involved bodily harm to a plaintiff, implicating their life or liberty. *See, e.g.*, *Est. of Soakai v. Abdelaziz*, 137 F.4th 969, 985 (9th Cir. 2025) (death and serious injury); *Martinez v. High*, 91 F.4th 1022, 1026 (9th Cir. 2024) (physical and sexual abuse); *Polanco*, 76 F.4th at 927 (death from exposure to COVID-19); *Murguia v. Langdon*, 61 F.4th 1096, 1114 (9th Cir. 2023) (death of ten-month-old twins); *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133–34 (9th Cir. 2018) (assault and battery); *Henry A. v. Willden*, 678 F.3d 991, 1003 (9th Cir. 2012) (abuse and neglect of foster children); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1058 (9th Cir. 2006) (murder); *L.W. v. Grubbs*, 974 F.2d 119, 120 (9th Cir. 1992) (assault, battery, kidnapping, and rape); *see also Railroad 1900, LLC v. City of Sacramento*, 604 F. Supp. 3d 968, 976 (E.D. Cal. 2022) (collecting cases).

Like our circuit, other circuits' state-created danger cases involve dangers to life or liberty. None encompass economic or property damage. *See, e.g.*, *Rakes v. Roederer*, 117 F.4th 968, 969 (7th Cir. 2024) (per curiam) (domestic violence and murder); *Irish v. Fowler*, 979 F.3d 65, 67 (1st Cir. 2020) (rape, kidnapping, and murder); *T.D. v. Patton*, 868 F.3d 1209, 1225, 1227 (10th Cir. 2017) (physical and sexual abuse of a child); *L.R. v. Sch. Dist. of Phila.*, 836 F.3d

235, 245 (3d Cir. 2016) (sexual assault); *Pena v. DePrisco*, 432 F.3d 98, 114 (2d Cir. 2005) (fatal car crash).

Here, the Businesses claim only economic loss— property damage and losses of revenues and profits. Those alleged harms only implicate due-process *property* interests. Although corporations undoubtedly possess due-process rights, *see Louis K. Liggett Co. v. Lee*, 288 U.S. 517, 575 (1933), it does not follow that the state-created danger doctrine must extend to cover this new kind of harm. The Businesses cite no cases—from this circuit or from any other—holding that the state-created danger doctrine provides an affirmative right to be free from state-created harm to property or profits. And the only two cases in which the Supreme Court has contemplated the state-created danger doctrine do not support an expansion of the principle. In *DeShaney*, the child expressly claimed that state officials had deprived him of his *liberty* by failing to intervene in his father's repeated violence. 489 U.S. at 193. In the other Supreme Court case, *Town of Castle Rock v. Gonzales*, Jessica Gonzales claimed that the town police violated her protected property interest in a restraining order by failing to enforce that order, which resulted in the murder of her three children. 545 U.S. 748, 754–55 (2005). But importantly, the Court held that Gonzales did not have a property interest in the restraining order and expressly declined to address whether property interests are cognizable under the state-created danger doctrine. *Id.* at 768.

We have "always been reluctant to expand the concept of substantive due process." *Brittain v. Hansen*, 451 F.3d 982, 990 (9th Cir. 2006) (quoting *Albright v. Oliver*, 510 U.S. 266, 271–72 (1994) (plurality op.)). And we must "exercise the utmost care whenever we are asked to break new ground in this field." *Washington v. Glucksberg*, 521

U.S. 702, 720 (1997).  That care counsels against expanding the state-created danger doctrine to cover this untrodden ground.[2]  We affirm the district court's dismissal of the state-created danger claim because that doctrine does not protect against purely economic harm to a protected property interest.[3]

## B. The Businesses Have Plausibly Alleged Nuisance Claims Under Washington Tort Law

The Businesses also bring nuisance claims against the City under RCW § 7.48.010, which provides that "an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of the life and property, is a nuisance."

The district court correctly found that the applicable two-year statute of limitations would bar the nuisance claims. However, the statute of limitations is subject to the equitable tolling principles of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), which we hold are available under Washington law.  We therefore reverse the district court's dismissal of the nuisance claims and remand for further proceedings.

---

[2] Our decision does not mean that the state always escapes liability for harm to private property.  For example, the Constitution provides "just compensation" for certain state invasions to property under the Takings Clause.  U.S. Const. amend. V, cl. 4; *see also Chicago Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 233–34 (1897) (incorporating the Takings Clause against the States).  State tort law may also provide a remedy for such harm.

[3] Our decision in *Sinclair v. City of Seattle* does not counsel otherwise, despite a suggestion in dicta.  61 F.4th 674, 683 (9th Cir. 2023).

### 1. The Businesses Failed to Timely File their Nuisance Claims

Oma Bap filed its nuisance claim on April 6, 2023, and Hugo Properties filed its claim on June 7, 2023. Both were filed just under three years after the City's abandonment of the East Precinct on June 8, 2020, and roughly two and a half years after the termination of any purported nuisance from CHOP in December 2020.

The parties disagree as to the applicable statute of limitations. The City argues that the district court correctly applied a two-year statute of limitations under Washington's catch-all statute, which provides that "[a]n action for relief not hereinbefore provided for, shall be commenced within two years after the cause of action shall have accrued." RCW § 4.16.130. The Businesses argue instead for the application of a three-year statute of limitations under RCW § 4.16.080.

Section 4.16.080 provides for a three-year statute of limitations for "waste or trespass upon real property," "an action for taking, detaining, or injuring personal property," "an action upon a contract or liability," "an action for relief upon the ground of fraud," "an action against a sheriff, coroner, or constable," and "an action against an officer [for] failure to properly account for public funds." The statute does not mention nuisance. The Businesses seek application of Section 4.16.080 by likening the nuisance at issue here to intentional trespass. That argument is unavailing.

The Washington Court of Appeals has repeatedly held that a two-year statute of limitations applies to nuisance under Section 4.16.130. *See Mayer v. City of Seattle*, 10 P.3d 408, 413 (Wash. Ct. App. 2000), *review denied*, 21 P.3d 1150 (2001); *Wallace v. Lewis County*, 137 P.3d 101, 110

(Wash. Ct. App. 2006); *Lange v. Cebelak*, No. 45726-1-II, 2015 WL 4067144, at \*3 (Wash. Ct. App. June 30, 2015); *see also* 29 David K. DeWolf, Wash. Prac., *Wash. Elements of an Action* § 23:7 (2025-2026 ed.) ("Nuisance actions are governed by a two-year statute of limitations.").

In the face of this precedent, the Businesses note that the Ninth Circuit has stated previously that the appropriate statute of limitations for nuisance claims under Washington law is three years. *See Skokomish Indian Tribe v. United States*, 410 F.3d 506, 516 (9th Cir. 2005) (en banc). That proclamation was conclusory, however, and was not analyzed or explained further. Moreover, the reference in *Skokomish* was not outcome-determinative, as the plaintiff in that case had not filed their complaint until ten years after the cause of action accrued; accordingly, the nuisance claim would have been untimely under either the two-year or three-year standard.

The Businesses also argue that the Washington Supreme Court in *Bradley v. American Smelting & Refining Co.* created a bifurcated system in which intentional nuisances are entitled to a three-year statute of limitations, while negligent nuisances are entitled to a two-year statute of limitations. 709 P.2d 782 (Wash. 1985). That argument overreads *Bradley*.

There, the court noted that the "remedies of trespass and nuisance are not necessarily mutually exclusive," especially in the case of air pollution. *Id.* at 790 (citation modified). But the court ruled that a *trespass* had occurred and did not comment on the appropriate statute of limitations for nuisance. *Id.* Although there may be overlap between nuisance and trespass in some cases, here, the Businesses pled only nuisance—which remains a distinct cause of

action.  As a post-*Bradley* decision of the Washington Court of Appeals clarified, "the *Bradley* Court did not change the statute of limitations period for nuisances.  Nor could the Court have made such a ruling, which would have contradicted a legislatively-enacted statutory requirement." *Wallace*, 137 P.3d at 110 n.13 (citation omitted).

Because there is no squarely on-point decision from the Washington Supreme Court, it is our responsibility to "predict how the [Washington] Supreme Court would decide the issue, using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids." *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).  And "[i]n the absence of convincing evidence that the highest court of the state would decide differently, a federal court is obligated to follow the decisions of the state's intermediate courts." *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990) (citation modified).  Here, the intermediate courts, including after *Skokomish*, overwhelmingly apply a two-year statute of limitation to nuisance claims.

When new decisions have emerged from a state's intermediate appellate courts that shed light on the correct application of state law, even absent new controlling precedent from the state's Supreme Court, we may update our understanding of state law without deference to our prior interpretation. *See Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983); *In re Watts*, 298 F.3d 1077, 1082–83 (9th Cir. 2002).  For that reason, we conclude that the two-year limit in RCW § 4.16.130 applies to nuisance claims, and therefore hold that the Businesses' claims were untimely filed.

## 2. *American Pipe* Tolling Is Available in Washington

Even if a claim is untimely filed, the statute of limitations may be tolled if permitted by state law. *Chardon v. Fumero Soto*, 462 U.S. 650, 661 (1983). One form of tolling, known as *American Pipe* tolling, might have been available to the Businesses had federal-law tolling applied. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 555 (1974). However, all parties agree that the Washington Supreme Court has not expressly made *American Pipe* tolling available under state law. Our charge is therefore to determine whether the Washington Supreme Court *would* apply *American Pipe* tolling, given the correct vehicle. *Gravquick A/S*, 323 F.3d at 1222.

Under federal law, *American Pipe* tolling is available to certain erstwhile putative class members. *See American Pipe*, 414 U.S. at 552–53. Under the principles of *American Pipe*, if class certification is ultimately denied, the statute of limitations of the claims brought by those putative class members begins to run on the day that class certification was denied. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008). That rule helps to preserve the efficiency of class actions by reducing the number of protective actions filed by putative class members to preserve claims in the event of class-certification denial. *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1187 (9th Cir. 2009).

Here, both Oma Bap and Hugo Properties were absent members of the putative class in the *Hunters Capital* litigation, which included an identical nuisance claim to the one brought in this action. Class certification was denied in *Hunters Capital* on May 9, 2022, nearly two years after the beginning of the CHOP protest, and eleven months before

Oma Bap and Hugo Properties filed their separate suits. If the Businesses are able to successfully obtain *American Pipe* tolling under Washington law, then the statute of limitations would have begun running on May 9, 2022, and the Businesses could proceed with their nuisance claims.[4]

During the pendency of this litigation, the Washington Supreme Court considered whether *American Pipe* tolling was available under state law. In *Campeau v. Yakima HMA, LLC*, the court ruled that *American Pipe* tolling was not applicable to the facts of *Campeau*, and that the court would "determine whether *American Pipe* tolling is available in . . . a case that more squarely confronts that question." 551 P.3d 1037, 1040 (Wash. 2024). Ultimately, the court tolled the claims under state-law equitable tolling doctrine. *Id.* at 1042.

In *Campeau*, union members sought to bring a subsequent class action after their theory of associational standing that undergirded their initial lawsuit failed. *Id.* at 1040. Unlike *American Pipe*, which involved "a failed class action and a follow-on motion to intervene," *Campeau*

---

[4] The parties disagree as to whether the Businesses are seeking "cross-jurisdictional" *American Pipe* tolling. At issue here is an initial state-law claim brought in a federal-court class action, and the same state-law claim brought in the same federal court in a subsequent individual action. As the district court correctly found, a claim is only "cross-jurisdictional" if the class action and the subsequent suit are brought in different jurisdictions. *See Clemens*, 534 F.3d at 1025. Cross-jurisdictional tolling creates the perverse incentive for litigants to file in a second jurisdiction after the dismissal of their claims in federal court, in order to resurrect their claims. *Hatfield*, 564 F.3d at 1187. Here, there is no such incentive because Washington tolling law applied to both the *Hunters Capital* litigation and to this litigation. The only question, then, is whether ordinary *American Pipe* tolling is available under Washington law.

involved "a failed representational action brought on a theory of associational standing and a follow-on class action." *Id.* The Washington Supreme Court therefore held that *American Pipe* did not apply because there was no "failed class action." *Id.*

Because we do not have a definitive ruling from the Washington Supreme Court, as with the statute of limitations question, we do our best to predict what the court would do. Here, the court's reasoning is illuminating. It provided several justifications for tolling Campeau's claims under state law. First, the court found that tolling was warranted because "there [was] no risk of surprise" to the defendant, as Campeau "raise[d] nearly the same claims that [the defendant] litigated for several years" in the prior suit. *Id.* at 1041. Second, Campeau "did not sleep on his claims or engage in wrongful conduct." *Id.* And finally, "applying equitable tolling . . . advance[d] the goals of adjudicative efficiency and justice," whereas "[f]ailing to extend equitable tolling in th[ose] circumstances [would have] undermine[d] the value of associational standing and disincentivize[d] members from relying on their unions and employee associations" while "burden[ing] [state] courts with a multiplicity of litigation," which "cut[s] against the benefits of associational standing." *Id.*

The Washington Supreme Court's logic closely parallels the rationale in *American Pipe*. *American Pipe* exists chiefly to preserve the "efficiency and economy" of class-action litigation, 414 U.S. at 553, just as the Washington Supreme Court sought to preserve the "adjudicative efficiency and justice" of associational-standing litigation, *Campeau*, 551 P.3d at 1041. The failure to apply *American Pipe* tolling would discourage the use of the class-action mechanism and encourage the filing of "protective actions to preserve

[plaintiffs'] claims," *Hartfield*, 564 F.3d at 1187, just as the Washington Supreme Court applied tolling in *Campeau* to ward against the undercutting of associational litigation and the potential for burdensome and duplicative litigation. And finally, just as in *Campeau*, the Businesses here have neither slept on their rights nor subjected the City to unfair surprise.

We acknowledge that the Washington Supreme Court has yet to take a position on whether *American Pipe* tolling is available under state law. However, doing our best to "determine what result the court would reach," we hold that the logic of *Campeau* is "convincing evidence" that the Washington Supreme Court would incorporate *American Pipe* tolling into state law. *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021) (citation modified). We therefore reverse the district court's dismissal of the Businesses' nuisance claims and remand for further proceedings.

## C. The Businesses Failed to State a Takings Clause Claim

The Businesses finally brought claims under the Takings Clause, alleging that the City's "ce[ssion]" of "their neighborhood" to the CHOP occupation constituted both a per se taking and a right-of-access taking. Neither theory holds water, and we affirm the district court's dismissal of the Takings Clause claims.

The Businesses rely primarily on *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021), to argue that the City effectuated a per se taking by physically appropriating their property in order to grant temporary access to third-party protestors.

But the per se taking claim fails for the simple reason that the Businesses do not allege any affirmative government invasion of *their own* property. They argue only that the City's material support of CHOP led to protestor occupation of the sidewalks, street, and intersection near their property. Mere proximity to government (or government-sponsored) occupation of land is insufficient to state a claim of per se taking.

To be sure, the Businesses allege that their property was vandalized, and that there was unlawful entry into Hugo Properties' apartment building. But they do not allege that those actions were the result of any intentional acts by the government. And the allegations relating to the non-policing policy—government *inaction*—cannot be construed as the government "physical[ly] tak[ing] property for itself or for someone else." *Cedar Point*, 594 U.S. at 149. The per se taking claim fails.

The alternate ground—a right-of-access taking—also fails because the Businesses do not assert an interest that is protected under state law. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1030 (1992). Washington law does not permit a right-of-access taking claim where the impairment to access is merely temporary. *See, e.g.*, *Stern v. City of Spokane*, 131 P. 476, 477 (Wash. 1913) ("If the testimony had shown a temporary obstruction . . . no recovery would have been allowed."); *see also Keiffer v. King County*, 572 P.2d 408, 409 (Wash. 1977) ("Not all impairments of access to property are compensable. Compensation is properly denied in those cases where an exercise of the police power does not directly affect access or the impairment of access is not substantial.") Here, the Businesses can—at most—allege that customers, employees, tenants, and suppliers were intermittently unable

to access their businesses for a period of six months. They cite no authority demonstrating that such a temporary restriction to access is compensable under Washington law.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

The parties shall bear their own costs on appeal.